# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

IN RE:

Washington Loop, LLC,            Case No. 9:11-bk-06053-
                                        Chapter: 11

       Debtor.

                                        **EMERGENCY RELIEF REQUESTED**

_____/

## DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING

Washington Loop, LLC ("**Washington**" or "**Debtor**"), the debtor-in-possession herein, files this *Motion for Authority to Use Cash Collateral* (this "**Motion**") and requests an emergency preliminary hearing. This Motion is brought pursuant to 11 U.S.C. § 363 and in support of this Motion, the Debtor respectfully represents as follows:

1. On March 31, 2011 (the "**Petition Date**"), Washington filed its voluntary petition under Chapter 11 of the Bankruptcy Code. No trustee or creditors' committee has been appointed.

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

3. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M), and is also a contested matter governed by F.R.B.P. 9014.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

5. The Debtor continues in possession of its assets and bankruptcy estate and is operating and managing its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

## BACKGROUND

6. Washington is a Florida limited liability company whose principal office is located in Punta Gorda, Charlotte County, Florida.

7. Washington owns and operates a dirt mine in Charlotte County, Florida.. The dirt is excavated and sold for use in public and private projects including road and highway paving.

8. The Debtor was engaged in protracted negotiation with Charlotte County to obtain the proper permitting to mine its property. It took the Debtor over two years to obtain the proper permitting instead of the normal 6-9 month period. This lengthy wait and the ensuing economic downturn with the attendant decline in construction of both public and private works, negatively impacted the Debtor's income. Consequently, the Debtor has defaulted on its loan obligations to the lender which holds the note and mortgage on the property, currently ROBI1956, LLC ("**ROBI**").

### *The Debtor's Pre-petition Debt Structure*

9. At the time of the filing of the Debtor's petition, the Debtor's assets at Washington were encumbered by a Mortgage and Security Agreement between the Debtor and Busey Bank (predecessor in interest to ROBI) dated September 19, 2007 (the "**Mortgage**"). The Mortgage secured a Promissory Note dated September 18, 2007, in the original principal amount of Six Million Seven Hundred Sixty Thousand Dollars ($6,760,000.00) (the "**Note**"). The Note was further secured by an Assignment of Rents and Profits (the "**Assignment of Rents**"). On information and belief, approximately $ 6,952,154.46 is still owed on the Note, although the Debtor disputes some of the sums claimed due. A true copy of the loan documents are attached hereto as Composite Exhibit "1," and incorporated herein by reference.

10. On or about October 18, 2010, ROBI obtained a Uniform Judgment of Foreclosure against the Debtor (the "**Judgment**") from the Circuit Court of the 20th Judicial Circuit, Charlotte

County, FL, case no. 09-004680-CA. The Judgment was in the total amount of $6,878,742.65 plus interest.

11. The liens and security interests of ROBI encumber personal property of the Debtor including accounts, deposit accounts, insurance proceeds, cash, cash equivalents, rents and profits of property that would constitute "cash collateral" as that term is defined in Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

### *The Debtor's Need for Use of Cash Collateral*

12. The Debtor hereby seeks authority for use of Cash Collateral pursuant to 11 U.S.C. § 363(a), which Cash Collateral is encumbered by the pre-petition lien now held by ROBI with regard to Washington.

13. Washington has approximately $520.00 of funds on hand at the Washington property as of the Petition Date, and Washington requires the use of this Cash Collateral to continue and maintain its operation of its business. Washington requires use of Cash Collateral to maintain and operate the mine.

14. Washington is negotiating a government contract to provide the dirt/sand. This contract, if awarded to Washington, will be a multi million dollar contract. By allowing the Debtor to increase its revenues, the Debtor can obtain a significant positive cash flow and substantially increase its value.

15. Washington has no funds other than Cash Collateral and no other means to obtain operating funds. If Washington is not permitted to use Cash Collateral, it will be forced to halt operations which will result in ( i) a loss of the going concern value of the business, (ii) a

reduction in the value of the estate's assets, (iii) an adverse effect on creditors and employees, and (iv) reduce the possibility of an effective reorganization in this case.

## RELIEF REQUESTED AND GROUNDS FOR RELIEF

16. By this Motion, to avoid immediate and irreparable harm to the Debtor's estate pending a Final Hearing, the Debtor respectfully requests (a) an emergency Preliminary Hearing to consider the immediate entry of an Interim Order authorizing the Debtor's limited use of Cash Collateral to the extent needed to avoid immediate and irreparable harm until a subsequent Final Hearing can be conducted to consider the relief requested in this Motion; and (b) a subsequent Final Hearing to consider the full relief requested by this Motion. Pursuant to Bankruptcy Rule 4001 and this Court's Administrative Order TPA- 2005-2, the Debtor provides the following information:

   A. **Identification of Secured Creditors Asserting an Interest in Cash Collateral**

17. As set forth above, the Debtor believes that only ROBI claims perfected and enforceable security interests and liens in the Debtor's personal property that may constitute Cash Collateral. The Debtor estimates that the amount ROBI claims it is currently owed is approximately $6,952,154.46.

   B. **Terms of Use of Cash Collateral and Offer of Adequate Protection**

18. The Debtor requests this Court's authorization to use the Cash Collateral, including, without limitation, the use of the collections and proceeds from rents.

19. For the thirty (30) days after the Petition Date, the Debtor will require approximately $40,000 to maintain and operate the subject properties if it does not receive an operating loan, and approximately $100,000 if it does receive an post-petition operating loan to maintain the

Debtor's operations, a greater or lesser amount will be required each comparable period thereafter.

20. The Debtor proposes to offer adequate protection to ROBI by granting ROBI a replacement lien in the Debtor's post-petition Cash Collateral, notwithstanding the provisions of Section 552 of the Bankruptcy Code, to the same extent, validity and priority of their respective liens in such Cash Collateral as of the Petition Date, and to maintain and operate the collateral so as to maintain the property and to increase its cash flow and market value.

  **C.**  **Amount of Cash Collateral as of the Petition Date**

21. As noted above, Washington has approximately $520 of funds on hand as of the Petition Date.

  **D.**  **Purposes for the Use of Cash Collateral and Operating Budget**

22. The Debtor must have access to and authorization to use Cash Collateral in the amounts and for the purposes set forth in the operating budgets that is attached hereto as Composite Exhibit 2, and incorporated herein by reference (Budget 1 is based on not receiving a post-petition operating loan, Budget 2 is based on receiving a post-petition operating loan of $1.3 Million). The operating budget will reflect the Debtor's immediate operational cash needs for the next six months.

23. The use of such Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor's estate, in order to maintain business operations and preserve value for all creditors. Among other things, the Debtor proposes to use Cash Collateral in accordance with the operating budget for payment of necessary payroll, suppliers, and other ordinary business expenses related to the daily operations of the Debtor's business.

# CERTIFICATE OF NECESSITY OF REQUEST FOR
## EMERGENCY HEARING REQUESTED

24. Operation of Washington's business requires the incurring of expenses on a daily basis as it operates on a day to day basis.

25. If the Debtor is denied the ability to immediately use Cash Collateral, there will be direct, immediate, and irreparable harm to the Debtor's ability to continue business operations, perform its obligations, and to maximize its assets and distributions to its creditors.

26. Washington will be without funds to operate and meet expenses if an emergency preliminary hearing is not granted.

27. Customers and unsecured creditors are now at risk due to the filing of the Petition and continue to be at risk until the determination by the Court of the right to use Cash Collateral.

28. Washington estimates that approximately thirty (30) minutes will be necessary for a preliminary hearing on this Motion and that a similar amount of time may be required for a final hearing.

29. Given that no creditor's committee has been named, a copy of this Motion will be served, pursuant to F.R.B.P. 4001(b), on ROBI and its counsel, the List of Creditors Holding (20) Largest Unsecured Claims and the U.S. Trustee's office, and notice of the hearing will be given to the same persons in such a manner as the Court directs.

30. The Debtor and its counsel are prepared to appear immediately at a hearing to demonstrate that the request for an emergency preliminary hearing is not the result of the Debtor's or counsel's procrastination or lack of attention.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting (1) an emergency preliminary hearing, (2) this *Motion for Authority to Use Cash Collateral*, (3) schedules a final hearing in compliance with F.R.B.P. 4001 to consider the entry of a final order granting the relief set forth in this Motion, (4) following a final hearing, enters a final order granting the relief requested in this Motion, and (5) such other and further relief as justice may require.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the forgoing has been sent by Facsimile, Electronic Mail, Hand Delivery, First Class U.S. Mail, postage prepaid, or the ECF Noticing system this April 18, 2011 to: United States Trustee, Timberlake Annex, 501 East Polk Street, Suite 1200, Tampa, FL 33602; J. Glenn Robinson, Registered Agent for ROBI1956, LLC, 1410 N. Cullen Avenue, Evansville, IN 47715; Albert J. Tiseo, Jr., Esq, attorney for ROBI1956, LLC, Goldman Tiseo & Sturges P.A., 701 JC Center Court, Suite 3, Port Charlotte, FL 33954; and to the list of Creditors, attached hereto.

/s/ Joel S. Treuhaft
Joel S. Treuhaft, Esq.
FBN: 516929
Richard Rodriguez, Esq.
FBN: 083546
Palm Harbor Law Group, P.A.
2997 Alternate 19, Suite B
Palm Harbor, Florida 34683
(727) 797-7799
Facsimile: (727) 213-6933
Attorneys for Debtor