UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:                                          Chapter   11

WASHINGTON LOOP, LLC,                           Case No. 9:11-bk-06053-JPH

          Debtor.
_____/

**CREDITOR CHARLES A. ROBINSON LIVING TRUST, DATED MAY 1991
JOINDER IN UNITED STATES TRUSTEE'S MOTION TO CONVERT TO CHAPTER 7**

     Creditor and interest holder, Charles A. Robinson Living Trust dated May, 1991

("Trust"), through its undersigned attorney, and pursuant to Section 1112 of the Bankruptcy

Code, moves for the dismissal or conversion of the instant Chapter 11 case and as grounds

therefore states:

     1.     The Trust joins in the motions to dismiss or convert ("Motions") filed by the

United States Trustee [Doc. 4 and 115] and adopts the arguments set forth in those motions.

     2.     The Debtor purportedly is operating an aggregate mine in Charlotte County,

Florida. The Debtor purportedly has in its possession equipment sufficient to operate that mine,

much of which is encumbered by liens to third party lenders.

     3.     A review of the Debtor's monthly operating reports ("Reports") show that there is

negligible net income from the Debtor's mining operations over the five months for which the

Reports are available. A summary of portions of the Reports are annexed to this motion as

Exhibit A. The summary shows net operating income as of August 31, 2011, of approximately

$2,500.00. Although the Debtor has communicated that it recently entered into a larger contract,

no time frame for realization of the contract proceeds was communicated.  Also, all of those

proceeds would be absorbed by adequate protection obligations.

4.      The Reports are consistent with the representations of Debtor's counsel in open court at the hearings held in this case on August 18, 2011. At that hearing, Mr. Treuhaft, on behalf of the Debtor, represented to this court that the Debtor had no ongoing contracts for the sale of fill and aggregates. Only purchase orders were being fulfilled on a sporadic basis. *See* Transcript of Hearing on August 18, 2011, ("Transcript"), pages 15-16 and 25. Clearly the lack of business has starved this Debtor of the cash needed to operation its business. This constitutes diminution of the estate and shows that the Debtor's does not have a reasonable likelihood of rehabilitation under Section 1112(b)(4)(A) of the Bankruptcy Code.

5.      The Debtor or its affiliates have been unable to pay adequate protection to any of its secured creditors since at least June or July, 2011. This is contrary to orders of this court requiring such payment by the Debtor or affiliates. This contravenes Section 1112(b)(4)(E) of the Bankruptcy Code.

6.      In August, 2011, the Debtor represented that it had a plan filed with the court that was an operating plan that would 'have the ability to pay every one off in full and return money to the equity partners.' (Transcript at page 17). The Debtor's Motion for Authority to Obtain Post-Petition Financing ("Financing Motion") seeks a maximum of $3,500,000.00 in post petition financing – less than 20% of the total secured debt encumbering the Debtor's assets. The proceeds would be insufficient to take out the senior secured debt, let alone to pay equity, in full. Once again the Debtor's waffling on the course it will follow toward rehabilitation and isan indication that there is not a reasonable likelihood of rehabilitation.

7.      The Debtor, through the Financing Motion, seeks to obtain a loan that cannot be supported by current operations. The initial fee for that loan is $35,000.00 with interest to accrue at 12% per annum. If fully funded, that would result in monthly interest-only payments of

$35,000.00. Although not expressly stated, the only source of funds to pay the interest accruing on this loan would be from the DIP lender itself. Moreover, the loan has only a one year term. The Financing Motion seeks to place the DIP lender in a first lien position on all of the Debtor's assets and matures in one year from the date that the loan is made. Given the recent business history of the Debtor, this amounts to a fire sale of estate assets to the DIP lender in that it would be receiving a first lien security interest in what the Debtor claims is a $45,000,000.00 asset for the low price of up to $3,500,000.00. The price may be less if the Debtor is unable to pay the debt service on the loan prior to the expiration of the loan term.

8.      The Debtor has failed to comply with this court's orders requiring the timely filing of a plan of reorganization and disclosure statement. (See Doc. 60). The untimely initial plan and disclosure statement have now been amended. However the amended plan and disclosure statement fail to set forth with any specificity, the means of implementing a plan. The Debtor does not state how it intends to generate increased sales of fill and aggregate that will support not only the Debtor's ongoing operations but its substantial pre and post petition loans. Without sales, there is no chance that the Debtor's business plan can succeed.

9.      The Debtor now seeks to employ counsel at an additional cost of over $125,000.00. In light of the Debtor's meager sales record, this is simply adding an additional debt burden to the Debtor which it cannot shoulder. Also it is eroding equity without any justifiable reason.

10.     Finally the Debtor's management has persisted in withholding critical information from both its creditors and its members. Specifically the Debtor withheld appraisals of the Debtor's assets until August, 2011 and has never provided any documentation showing the negotiations with prospective purchasers or Debtor in Possession financiers. This dearth of

information makes it impossible for the equity security holders and insider creditors from meaningfully evaluating the viability of the Debtor and its ongoing 'business operations'.

11.     For the foregoing reasons, the instant Chapter 11 case should be converted to Chapter 7 so that a Chapter 7 trustee can conduct an auction or other type sale to maximize value to the creditors and equity holders.

Dated: September 14, 2011

_**/s/ Richard Johnston, Jr.**_
Richard Johnston, Jr.
Florida Bar No. 0340995
Fowler White Boggs, P.A.
P.O. Box 1567
Fort Myers, FL 33902-1567
Telephone: 239-334-7892
Facsimile: 239-334-3240
richard.johnston@fowlerwhite.com
Attorneys for Creditor Robinson Trust

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via

CM/ECF this **14th** day of September, 2011, to:

United States Trustee
J. Steven Wilkes
Joel S. Treuhaft
Jeffrey W. Leasure
Albert J. Tiseo, Jr.
Roger H. Miller
Scott Stigall
Andrew C. Ozete
Lisa M. Castellano
Theodore R Walters

**And via U.S. Mail to:**
Washington Loop, LLC
37894 Washington Loop Road
Punta Gorda, FL 33955

Mailing Matrix

*/s/ Richard Johnston, Jr.*
Richard Johnston, Jr.

43521866v1